*Northern District*

No. 5005

**JOSEPH L. CAPUTO**

v.

**C. BOWEN, INC.**

(June 13, 1957)

*Present*:   GADSBY, P. J., ENO AND CONNELLY, JJ.

*Connelly, J.*   In this action of tort the plaintiff seeks damages, alleging that the defendant, its agents or servants so carelessly and negligently operated a motor vehicle while on the premises of the plaintiff that it collided with a structure of the plaintiff, causing damage to the same and putting him to great expense. The answer is a general denial, with a plea of contributory negligence on the part of the plaintiff, and other special answers upon which the defendant does not now rely.

*At the trial there was evidence tending to show that*:

"The defendant owned a tractor and trailor combination, which was used for the transporting of steel and other building equipment. On or about Friday, December fourth, 1953, the defendant agreed with the plaintiff to pick up a load of steel in the plaintiff's place of business which was to be transported the following Monday morning from Somerville to Boston. On the afternoon of that day the defendant's tractor and trailer, being operated by one of the defendant's employees, was driven to the plaintiff's place of business, part of which consisted of a loading area, so called, which was an open area fenced in, with a gate giving access to it. The defendant's operator backed the tractor and trailer through the gate and into the lot of land occupied by the plaintiff and stopped it there to be loaded. The trailer portion of the vehicle was then loaded with steel by the plaintiff's employees under the supervision of one

Lewis Shena, the plaintiff's foreman, who was in charge of such operations for the plaintiff. The loading was completed later in the afternoon of December the fourth and the steel was to be delivered on a construction job in Boston early the next Monday morning. It was necessary that the steel be delivered at the time work commenced on the job in Boston Monday morning or the plaintiff, who was furnishing the steel on that job would be subjected to "back charges", so called. After loading was completed the tractor and trailer were backed under a craneway, so called, where the trailer was to be left and driven on Monday morning by the defendant's employee to the construction job in Boston. This procedure was customary and had been done on several occasions before. The craneway under which the vehicle was parked was constructed of four uprights embedded in cement bases in the ground and extended about 17 to 18 feet above ground, at the uppermost portions of which there was attached a traveling crane which was used for the purposes of lifting steel and steel products in the plaintiff's business. After the vehicle had been parked, the defendant's operator lowered the so called dolly wheels, which support the front end of the trailer when the tractor portion of the vehicle is detached. Before the dolly wheels were lowered the defendant's employee placed several wood beams composed of four inches by four inches hard wood under the dolly wheels. After lowering the dolly wheels onto the wood beams the defendant's operator detached the tractor and drove it away. The evidence showed that it was a clear day in December. The surface of the ground where the trailer was parked was unpaved and dry."

There was further evidence from Lewis Shena, the plaintiff's foreman, over the objection of the defendant, to the following conversation which was allowed in evidence *de bene* by the Court: "Shena told the

defendant's operator that he did not want the donkey (tractor) taken off the trailer and the defendant's employee replied that Cunningham, who was his boss, did not want the donkey left there and that Shena then told the defendant's operator that they had no room there for the trailer. When the trailer was left in this position, however, Shena did nothing further about having it removed and at no time reported the fact to the plaintiff's general superintendent, who was then on the premises and who also left the scene shortly thereafter."

No motion was made to strike out the evidence taken *de bene*.

There was further evidence from Vincent Caputo, general superintendent for the plaintiff, that: "He saw the trailer being loaded, saw the trailer parked with its load under the crane, knew the job was ready for delivery on the next Monday morning, was in charge of the business at the time, received no complaint from Shena as to the trailer's being parked under the crane and drove away from the premises at the close of business after seeing the trailer parked in the position where the accident occurred."

Shena further testified "that the amount of steel loaded on the trailer was about 20 tons, that he had no conversation with the defendant's operator concerning the condition of the ground where the trailer was parked."

There was also evidence that: "After the trailer had been left on the plaintiff's premises it began to rain, and during the four hour period thereafter rain fell quite heavily. The ground about the beams supporting the dolly wheels had washed away, the four inches by four inches beams had sunken into the washed out area and broken, permitting the dolly wheels to sink into the rain softened ground. When the dolly wheels sank into the ground the trailer had tipped over against the uprights of the crane, bending

them, and the load of steel on the trailer had shifted and slipped off. The plaintiff's employees reloaded the steel and it was delivered on the job in Boston at its scheduled time."

At the close of the trial and before the final arguments the defendant made the following requests for rulings:

"1. The evidence does not warrant a finding for the plaintiff.

2. The plaintiff has failed to sustain the burden of proving that negligence of the defendant, its agents or servants caused the damage for which the recovery is sought.

3. The evidence warrants a finding that the plaintiff's own negligence contributed to causing the damages for which he seeks recovery here.

4. The evidence is insufficient to warrant a finding that the defendant, its agents or servants was negligent."

The Court allowed the defendant's request numbered 3 and denied the defendant's requests numbered 1, 2 and 4, but did not make any special findings of fact and found for the plaintiff.

The defendant claims to be aggrieved by these denials. The only question involved here is the correctness of these rulings.

The trial judge by making a few special findings of fact could have clarified the basis on which he made his general finding for the plaintiff, but he did not do so. This is a practice not to be commended. We must decide then whether the evidence reported justifies the rulings of the trial judge and the general finding for the plaintiff.

"One is bound to anticipate and provide against what usually happens and what is likely to happen, but is not bound in like manner to guard against what is unusual and unlikely to happen, or what, as is sometimes said is only remotely and slightly probable." *Falk v. Finkelman*, 268 Mass. 524, 527.

Again, it was held in *Dennehy v. Jordan Marsh Company*, 321 Mass. 78, 80, that it was not necessary that the defendant's agents or employees should foresee what actually did happen but it was enough if they ought to have reasonably anticipated what did happen.

The above citations state the law covering the conduct and the duty of the defendant under the circumstances. To say the least, the defendant was bound to use precaution and reasonable care in its management and control of the trailer, so that it would not damage the property of others.

The defendant had the custody and control of the trailer, certainly after it was once loaded. It was the decision of the defendant, its agent or employees that decided where and how the trailer should be left over the week-end, and it even could have been found from the evidence that the defendant's employee refused to follow a suggestion, that if followed might have prevented the accident. The defendant, however, insisted that it exercise the final decision.

It should be pointed out also that the evidence shows that the trailer was to be left there from Friday afternoon until Monday morning, a period which included three nights in the month of December, a month in which one might reasonably anticipate a rain or snow storm and the possible effect on the position of the trailer, which was carrying a load of twenty tons of steel.

We do not know what evidence the judge believed but he heard it, saw the witnesses and could draw inferences from the testimony. There was evidence from which he could have found lack of negligence on the part of the plaintiff and negligence on the part of the defendant, and that under all the circumstances the defendant should have reasonably anticipated what was likely to happen and what did happen. The general finding of the trial judge im-

ports the finding of all subsidiary facts and the drawing of all rational inferences permissible on the evidence to support that result. *Povey v. Colonial Beacon Oil Co.*, 294 Mass. 86.

As there was no prejudicial error in the denial of the defendant's requests for rulings, the *Report is to be Dismissed*.

Kingston, Coffin & Jones, for the Plaintiff.
Henry Hellyer, for the Defendant.